IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| MARK FLOERSHEIM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CIV 05-293 RB/RHS |
| ) | |
| GOODWILL INDUSTRIES OF ) | |
| NEW MEXICO, INC., ) | |
| a domestic non-profit corporation, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's (Goodwill Industries of New Mexico, Inc.) Motion for Summary Judgment (Doc. 25), Plaintiff's (Mark Floersheim) Motion for Summary Judgment (Doc. 35), and Plaintiff's Motion in Limine to Exclude Evidence and Testimony (Doc. 37). Jurisdiction arises under 28 U.S.C. § 1331 and 29 U.S.C. § 2617.

Having considered the parties' submissions, and being otherwise fully advised, I hereby grant Defendant's motion and deny Plaintiff's motions.

**I.    Background.**

This case relates involves Plaintiff's resignation, in lieu of termination, from his employment with Defendant and request for leave under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654 (1993) [hereinafter "FMLA"]. (Compl. ¶¶10, 20; Pl.'s Mot. Summ. J. at 1.) Except as otherwise noted, the following facts are undisputed.

Defendant employed Plaintiff, as a full-time appraiser, from September 11, 1995 until

1

November 12, 2003. (Pl.'s Mot. Summ. J. at 1, Ex. 7 at 6.)  Plaintiff's tenure with Defendant was tumultuous.  Indeed, between October 13, 2000 and August 15, 2003, Defendant documented more than seventeen incidents in which it reprimanded or counseled Plaintiff "regarding policy, performance or absentee issues" by his supervisors.  (Chavez Aff. ¶7; Pl.'s Resp. Br. Def.'s Mot. Summ. J. at 3; *see also* Def.'s Mem. Supp. Mot. Summ. J. at 6.)

Plaintiff's absenteeism ultimately precipitated his August 2003 termination.  (Michaels Depo. at 11:9-15; Chavez Depo. at 30:22-25; Plaintiff Depo. 25:13-25, 26:1-2.)  During the August 1-15, 2003 pay period, Plaintiff incurred two unauthorized absences.  (Def.'s Mem. Supp. Mot. Summ. J. Ex. B (Plaintiff's time card for Aug. 1-15, 2003).)  Consequently, on August 14, 2003, Plaintiff's supervisor filed a "Corrective Action Form" recommending that Defendant terminate Plaintiff.[1] (Michaels Depo. at 11:1-7.)

On Friday, August 15, 2003, Defendant's CEO, Patrick Michaels, and Human Resources Manager, Lisa Chavez, met with Plaintiff [hereinafter "August 15 meeting"].  (Plaintiff Depo. at 15:14-25; Michaels Depo. at 11:8-22.)  Michaels informed Plaintiff of the August 14 "Corrective Action Form" and that, consequently, Defendant was close to terminating Plaintiff for absenteeism.[2]

---

[1] In April 2003, Plaintiff's supervisor formally reprimanded him for several unauthorized absences. (Def.'s Mem. Supp. Mot. Summ. J. at 6; Pl.'s Resp. Br. Def.'s Mot. Summ. J. at 3; Plaintiff Depo. at 65:24-25, 66:1-11 (Plaintiff failed to report to work, or contact his supervisor, on April 16 and April 17, 2003.)  The written reprimand advised Plaintiff that if he incurred additional unauthorized absences over the following twelve-month period he could be terminated by Defendant. (Plaintiff Depo. at 64:21-25, 65:1-23; *see also* Def.'s Mem. Supp. Mot. Summ. J. at 6; Pl.'s Resp. Br. Def.'s Mot. Summ. J. at 3.)

[2] The Court acknowledges the New Mexico Department of Labor [hereinafter "NMDOL"] Appeals Bureau found, in assessing Plaintiff's eligibility for unemployment benefits, that the August 15 meeting was not primarily prompted by Plaintiff's absenteeism. (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 6 ¶4 (NMDOL Administrative Law Judge's "findings of facts") (August 15 meeting precipitated by "an investigation of anonymous allegations that [Plaintiff] had been selling goods belonging to [Defendant] on E-Bay" and noting that Plaintiff "emphatically deni[ed]" the allegations).)  The basis for NMDOL's conclusion is unclear. (Plaintiff Depo. at 24:24-25, 25:1 ("[Michaels] said the reason he was talking to me had nothing to do" with the e-Bay investigation").)  In any event, the discrepancy is immaterial here. *See infra* Part II.C.1. (finding that Defendant decided to terminate

(Michaels Depo. at 11:8-22.)  While Plaintiff mentioned his drinking problem at the August 15 meeting, Michaels testified that their discussion did not "uncover any extenuating circumstances" that might justify Plaintiff's absenteeism.[3]  (Michaels Depo. 12:1-11; Plaintiff Depo. at 17:15-17.)

The August 15 meeting concluded with Michaels explaining to Plaintiff that he "was seriously considering separating [Plaintiff's] employment" due to his numerous work-place violations. (Chavez Depo. at 30:19-25; Michaels Depo. at 11:16-25.)  Michaels told Plaintiff that he needed to further review Plaintiff's personnel record before deciding whether to terminate him.  (Michaels Depo. at 11:16-25, 12:13-15; Chavez Depo. at 33:4-6.)  They agreed to meet again Monday morning, August 18, 2003. (Plaintiff Depo. at 16:8-11, 17:3-5; Michaels Depo. at 12:24.)  Michaels testified that, after reviewing Plaintiff's personnel file over the weekend, he decided to terminate Plaintiff.  (Michaels Depo. at 12:16-25.)  On Monday, August 18, 2003, Michaels met with Human Resources Manager Chavez prior to meeting with Plaintiff.  (Chavez Depo. at 37:12-21.)  At that time, Michaels told Chavez that he had decided to terminate Plaintiff.  (Chavez Depo. at 37:12-21.)

After meeting with Chavez, Michaels met with Plaintiff [hereinafter "August 18 meeting"]. (Michaels Depo. at 12:24-35, 13:1-5; Chavez Depo. at 35:4-23.)  Plaintiff told Michaels that he wanted to "try again." (Michaels Depo. at 13:5-9.)  Michaels, however, told Plaintiff that he could no longer work for Defendant.  (Michaels Depo. at 12:24-25, 13:5-9.)  Michaels informed Plaintiff that he had two options: resignation, which would preserve his employment record, or termination. (Michaels Depo. at 28:17-19; Plaintiff Depo. 41:1-3, 43:16-17.)

---

Plaintiff, for whatever reason, before Plaintiff requested FMLA leave on August 18, 2003).

[3]Indeed, during the August 15 meeting Plaintiff disclosed other policy violations, which Michaels testified, "would have resulted in termination previous to our conversation." (Michaels Depo. at 12:1-3.)

At some point during the August 18 meeting, Plaintiff handed Michaels a written request for immediate FMLA leave related to his "ongoing problem with alcohol." (Plaintiff Depo. at 22:16-21, 23:7-8; Michaels Depo. at 13:10-14.) Although Michaels told Plaintiff that he would need to speak with Defendant's attorney before he could act on Plaintiff's request, Michaels agreed to look into the matter. (Michaels Depo. at 13:16-19; Chavez Depo. at 49:21-25.) Michaels also made clear that Plaintiff could no longer work for Defendant, regardless of whether Defendant granted Plaintiff FMLA leave. (Plaintiff Depo. at 46:1-5; Michaels Depo. at 14:2-11.) Michaels told Plaintiff that in the event Defendant granted his request, he would have to submit a letter of resignation effective upon the expiration of his FMLA leave. (Plaintiff Depo. at 46:1-5; Michaels Depo. at 14:2-11.)

The parties emphatically dispute whether Plaintiff requested FMLA leave at the outset of the August 18 meeting (Plaintiff Aff. ¶2), or after Michaels had informed him that he would not be permitted to continue working for Defendant, (Michaels Aff. ¶8). Furthermore, Plaintiff testified that he chose to resign because he "felt that getting the FMLA was directly tied to [his] resigning." (Plaintiff Depo. at 46:9-25, 47:1-3, 11-17.) Yet, Plaintiff also testified that he did not believe requesting FMLA leave would allow him to escape termination (Plaintiff Depo. at 38:13-15), and he understood that, in any event, he could not "continue working for Goodwill." (Plaintiff Depo. at 41:1-3; *cf.* Pl. Aff. ¶5 ( "I never wanted to resign from [Defendant], but believed that was the only choice given to me by [Defendant] if I wanted to have my FMLA leave request granted").) In any case, it is undisputed that Michaels "decided to terminate" Plaintiff "prior to Plaintiff's arrival at Goodwill on August 18, 2003." (*Compare* Def.'s Br. Mot. Summ. J. at 7 ("Defendant's Undisputed Facts Nos. 8-9"), *with* Pl.'s Resp. Def.'s Mot. Summ. J. at 5 (stating, with regards to "Defendant's undisputed fact" nos. 8 and 9, that: "Plaintiff does not dispute this statement").)

The afternoon of August 18, Chavez informed Plaintiff that Defendant would approve his FMLA leave and, at the same time, asked Plaintiff to resign. (Plaintiff Depo. at 104:7-21.) Later that day, Plaintiff submitted his written resignation, "effective 12 weeks from tomorrow on November 12, 2003." (Pl.'s Mot. Summ. J., Ex. 7 at 3 (Plaintiff's letter of resignation).) Michaels testified that had Plaintiff not agreed to resign, "[h]e would have been terminated" and, "[b]ecause he [would have] been fired" on August 18, Defendant would not have granted him FMLA leave.[4] (Michaels Depo. at 27:16-25, 28:1-2.)

Hence, on August 18, 2003, Defendant granted Plaintiff's requested FMLA leave and accepted Plaintiff's resignation. (Compl. ¶14.) By resigning effective November 11, Plaintiff was paid for his accrued sick time and Defendant continued to pay the employer portion of his medical coverage throughout his FMLA leave.[5] (Michaels Depo. at 14:7-15; Chavez Aff. ¶11; Plaintiff Depo. at 58:5-17.)

After his termination, Plaintiff applied for unemployment benefits from the New Mexico Department of Labor [hereinafter "NMDOL"]. (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 (documents related to Plaintiff's application for NMDOL unemployment benefits).) Defendant contested his application on the grounds that it terminated Plaintiff for "misconduct connected with the individual's employment."[6] (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 7 (quoting N.M. STAT.

---

[4]It bears mention that Defendant maintains that Plaintiff committed another work-place violation while on FMLA leave. *See infra* note 11 (referencing alternative grounds for Defendant's summary judgment motion).

[5]Michaels and Chavez testified that, normally, Defendant does not compensate terminated employees for accrued sick time and ceases paying the employer portion of the medical coverage premiums after the date of termination. (Michaels Depo. at 14:7-15; Chavez Aff. ¶12.)

[6]Defendant stated that it terminated Plaintiff for absenteeism and also for his "improper internet auction activity involving [Defendant's] property" during his tenure. (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 7.) *See* N.M. STAT. ANN. § 51-5-7A(2) (Mitchie 2005) ("An individual shall be disqualified for and shall not be eligible to

ANN. § 51-5-7A(2) (Mitchie 2005)).) To be clear, Defendant's submissions to NMDOL stated plainly that Plaintiff resigned involuntarily:

> [Defendant] advised [Plaintiff] he would be separated from employment based on multiple policy violations and organizational standards which are significantly below what is expected for Goodwill employees . . .[he] was given the opportunity to resign opposed to being discharged and [Plaintiff] elected to resign . . . [Defendant] agreed to [Plaintiff's] request for FMLA contingent upon verification of eligibility from his doctor and to allow him to resign on the day following the expiration of FMLA time. [Defendant] consented to this to better enable [Plaintiff] to get the treatment he believes he needs.

(Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 2 (Defendant's "Employer Statement" submitted to NMDOL).) NMDOL, however, upheld Plaintiff's eligibility for unemployment benefits.[7] (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 7 (NMDOL's Decisions of Appeal Bureau concluded that Plaintiff's termination had not "resulted from a course of conduct . . . reflecting a wilful disregard of the employer's best interests").)

## II.     The Parties' Motions for Summary Judgment.

The parties filed cross-motions for summary judgment, as well as applicable responsive motion papers.

### A.     Summary Judgment Standard.

Pursuant to FED. R. CIV. P. 56(c), summary judgment "is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

---

receive benefits . . . if it is determined by the division that the individual has been discharged for misconduct connected with the individual's employment").

[7]Therein, NMDOL found that the "record d[id] not support" Defendant's position that: (1) Plaintiff "violated the terms" of the April 2003 warning for absenteeism; and (2) Plaintiff's internet auction activity "involv[ed] property of the employer." (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 7.) *See also supra* note 1.

judgment as a matter of law.'" *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (quoting FED. R. CIV. P. 56(c)).  Thus, the Court must analyze the "factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party." *See id.* (citation omitted).

The moving party shoulders "the initial burden to show that there is an absence of evidence to support the nonmoving party's case." *Id.* (quotation marks and citation omitted).  If the moving party satisfies this burden, the non-moving party must "identify specific facts that show the existence of a genuine issue of material fact." *See id.*  That is, the "party opposing the motion must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.*

An otherwise well-taken summary judgment motion is not, however, defeated by the "mere existence of *some* alleged factual dispute between the parties . . . the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis added).  On appeal, a district court's grant of summary judgment on a FMLA claim is reviewed *de novo*. *See McBride v. CITGO Petroleum Corp.*, 281 F. 3d 1099, 1107 (10th Cir. 2002).

### B.     The Family and Medical Leave Act of 1993 ("FMLA").

Under the FMLA, an eligible employee who suffers from a "serious health condition" is "entitled to a total of 12 workweeks of leave during any 12-month period."[8]  *See* 29 U.S.C. §

---

[8]A "serious health condition" is one "that makes the employee unable to perform the functions of the position of such employee." *See* 29 U.S.C. § 2612(a)(1)(D).  It is undisputed that Plaintiff's alcohol abuse "interfered with his ability to perform his job duties" in August 2003.  (Answer ¶11.)  *See* 29 C.F.R. § 825.114(d) (substance abuse "may be a serious health condition"); *see also Renaud v. Wyoming Dept. of Family Servs.*, 203 F.3d 723 (10th Cir. 2000) (implicitly recognizing that substance abuse, specifically abuse of alcohol, can be a "serious health condition" under FMLA).  *Accord Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 488 (6th Cir. 2005) (expressly recognizing that alcoholism is a "serious health condition"); *Lau v. Behr Heat Transfer Sys., Inc.*, 150 F. Supp. 2d 1017, 1021 (D.S.D. 2001) (expressly recognizing that alcohol dependency is a "serious health condition").

7

2612(a)(1)(D). FMLA makes clear that any employee who "takes leave" under the Act for a proper purpose must be "restored by the employer" to the same, or "equivalent," position. *See id.* § 2414(a).

The Act affords employees whose FMLA rights have been violated "two separate theories of recovery": (1) interference/entitlement; and (2) retaliation/discrimination. *See Dry v. Boeing Co.*, No. 01-3294, 92 Fed. Appx. 675, 678 (10th Cir. Feb. 19, 2004) (citing 29 U.S.C. § 2615(a)) ("We identified subsection (a)(1) as the 'interference/entitlement theory' and subsection (a)(2) as the 'retaliation/discrimination' theory."). Here, however, it appears that Plaintiff proceeds only under an FMLA interference claim.[9] (Pl.'s Mot. for Summ. J. at 2-3 (moving for summary judgment based on "Defendant's Interference with Plaintiff's FMLA rights" alone).)

Establishing a prima facie FMLA interference claim requires that a plaintiff establish:

> (1) that he was entitled to FMLA leave, (2) that some adverse action by the employer interfered with his right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of his FMLA rights.

*Jones v. Denver Public Sch.*, 427 F.3d 1315, 1318-19 (10th Cir. 2005). Notably, the "interference" theory does not require an employee to evidence mal intent on the employer's part.[10] *See Smith v.*

---

[9] While Plaintiff asserted grounds for a retaliation/discrimination claim in his Complaint, Plaintiff's subsequent submissions indicate that he is proceeding only under an interference theory. (*Compare* Compl. ¶¶16-17 (alleging Defendant "interfered" and "retaliated" against Plaintiff in his exercise of his FMLA rights), *with* Pl.'s Mot. for Summ. J. at 3 (moving for summary judgment solely because "Defendant *interfered* with Plaintiff's FMLA rights") (emphasis added); *see also* Initial Pretrial Report at 2 (Plaintiff's Contentions: "Defendant *interfered* with Plaintiff's FMLA rights") (emphasis added).) In any case, because there is no evidence that Defendant's decision to separate Plaintiff was causally related to its decision to grant Plaintiff FMLA leave, Plaintiff cannot survive Defendant's summary judgment motion under either an interference theory or a discrimination theory. *Compare* Part II.C.1. (Defendant is entitled to summary judgment under interference theory because no "causal connection" existed between Defendant's adverse employment action and Plaintiff's FMLA rights), *with Chavez v. Thomas & Betts Corp.*, 396 F.3d 1088, 1104 (10th Cir. 2005) (prima facie discrimination claim requires showing an extant "causal connection" between plaintiff's FMLA rights and employer's adverse employment action).

[10] The interference claim derives from "FMLA's creation of *substantive* rights" and, thus, if "an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation *regardless of the employer's intent*." *Smith*, 298 F.3d at 960 (emphasis added).

*Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002); *King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir.1999) ("the employee must demonstrate by a preponderance of the evidence only entitlement to the disputed leave . . . the intent of the employer is immaterial."). Thus, an employee "can prevail under an entitlement theory if she was denied her substantive [FMLA] rights . . . for a reason *connected with* her FMLA leave"; that "reason need not be retaliation." *Smith*, 298 F.3d at 960 (emphasis added).

At the same time, it is clear that "'an employee who requests [FMLA] leave or is on [FMLA] leave has no greater rights than an employee who remains at work.'" *Id.* (internal quotation marks and citation omitted); *see also* 29 C.F.R. § 825.216(a) (1995) (outlining limitations on employers' obligation to reinstate employees who take FMLA leave). In *Smith*, the Tenth Circuit explained that:

> an employee who requests FMLA leave would have no greater protection against his or her employment being terminated *for reasons not related to his or her FMLA request* than he or she did before submitting the request . . . an employee may be dismissed, preventing her from exercising her statutory right to FMLA leave - but only *if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave*.

*Smith*, 298 F.3d at 960 (internal quotation marks omitted) (emphasis added); *see also* 29 C.F.R. § 825.312(d) (1995) (an employee's rights to FMLA leave, maintenance of health benefits, and restoration *cease under FMLA if and when the employment relationship terminates*") (emphasis added). Simply put, the Act "does not insulate an employee from being fired" for reasons "not related to his or her FMLA request." *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

### C. Defendant's Motion for Summary Judgment is granted; Plaintiff's Motion for Summary Judgment is denied.

As a threshold matter, the parties do not dispute that Plaintiff is an eligible employee,

Defendant is a covered employer, or that Plaintiff's alcohol problem severely interfered with his ability to perform his job duties.[11] *See* 29 U.S.C. 2612(a)(1)(D). Nor do they contest that Defendant employed Plaintiff as an at-will employee.

### 1. Defendant's Motion for Summary Judgment.

Plaintiff contends that Defendant interfered with his FMLA rights in violation of 29 U.S.C. § 2615(a)(1) when it "manipulated [Plaintiff] into signing a letter of resignation in order to avoid . . . responsibility" for: (1) reinstating Plaintiff following his FMLA leave; and (2) paying Plaintiff's unemployment benefits. (Pl.'s Mot. Summ. J. and Br. at 2.) Defendant moved for summary judgment on the ground that it is undisputed that Defendant "decided to terminate Plaintiff *prior* to his request for leave" and, thus, no extant causal connection existed between Plaintiff's resignation and Defendant's decision to grant his request for FMLA leave. (Def.'s Mot. Summ. J. at 2.) That is, Defendant maintained that its decision to terminate Plaintiff was "due solely to reasons unrelated to his FMLA request." (Def.'s Mot. Summ. J. at 2.)

Drawing all proper inferences in Plaintiff's favor, *see supra* Part II.A., it is clear that no genuine issue of fact remains regarding whether Defendant had an "independent basis" for asking Plaintiff to resign. *See McBride*, 281 F.3d at 1108. Indeed, Plaintiff concedes that Defendant had resolved to terminate him before he requested FMLA leave. Defendant's summary judgment motion is, therefore, well-taken and will be granted.

First, the record reflects that Defendant decided to terminate Plaintiff before the August 18 meeting. (Michaels Depo. at 54: 13-16.) It is undisputed that: (1) before Michaels met with Plaintiff

---

[11]Because Defendant had an "independent basis" for terminating Plaintiff wholly distinct from Plaintiff's request for, and Defendant's grant of, FMLA leave, and, therefore, Plaintiff cannot withstand Defendant's motion, *see infra* Part II.C.1., the Court need not address Defendant's alternative grounds for summary judgment.

10

on August 18, 2003, Michaels had decided to terminate Plaintiff (Michaels Depo. at 12:24-25, 13:1 (decision to terminate Plaintiff discussed with Chavez prior to meeting with Plaintiff the morning of August 18, 2003); Chavez Depo. at 35:10-12 (same)); and (2) Plaintiff requested FMLA leave for the first time during the August 18 meeting. (Plaintiff Depo. at 38:7-12, 39:1-5 (Plaintiff first researched his eligibility for FMLA leave following August 15 meeting and delivered his request to Michaels on August 18); Michaels Depo. at 13:10-14 (Plaintiff first requested FMLA leave on August 18).)

Moreover, Plaintiff concedes that Michaels decided to terminate Plaintiff before the August 18 meeting. (*Compare* Def.'s Br. Mot. Summ. J. at 7 ("Defendant's Undisputed Facts Nos. 8-9" he had "decided to terminate" Plaintiff "prior to Plaintiff's arrival at Goodwill on August 18, 2003." ), *with* Pl.'s Resp. Def.'s Mot. Summ. J. at 5 (stating, with regard to "Defendant's undisputed fact" 8 and 9, respectively, that: "Plaintiff does not dispute this statement").) Hence, precisely when Plaintiff requested leave within the context of the August 18 meeting, a point the parties emphatically dispute, is virtually immaterial. *See Munoz*, 221 F.3d at 1164.

Second, Plaintiff maintained that Defendant used its approval of Plaintiff's FMLA leave "as a bargaining chip to obtain" Plaintiff's resignation, thereby avoiding having to reinstate him or pay his unemployment benefits, the record contains no indicia of any improper coercion by Defendant. Defendant, however, produced evidence that it did not coerce Plaintiff's resignation.[12] (Michaels Depo. at 28:17-19; Plaintiff Depo. 41:1-3, 43:16-17.)

It is undisputed that Michaels gave Plaintiff two choices at the August 18 meeting: resignation

---

[12]To the contrary, as noted *supra* Part I, Plaintiff testified that, prior to the August 18 meeting, he knew he might be terminated and that he did not believe that by requesting FMLA leave he could save his job. (Plaintiff Depo. at 38:10-15.)

or termination. (Michaels Depo. at 28:17-19; Plaintiff Depo. 41:1-3, 43:16-17.) Yet, it is well-established that "[a] choice between resignation or termination does not establish that [an employee's] resignation was involuntary, unless the employer lacked good cause to believe that there were grounds for termination." *See Parker v. Bd. of Regents of Tulsa Jr. Coll.*, 981 F.2d 1159, 1162 (10th Cir. 1992). Therein, given that the record reflects that Defendant had "good cause to believe" grounds existed that necessitated Plaintiff's termination, and is otherwise devoid of facts from which a juror could "reasonably infer" Plaintiff's resignation was coerced, Plaintiff's theory of FMLA "interference by coercion" fails. *See supra* note 1 (detailing Plaintiff's absenteeism),

Likewise, Plaintiff's contention that, in allowing Plaintiff to resign, Defendant sought to avoid responsibility for Plaintiff's unemployment benefits is equally unavailing. While Defendant apparently contested Plaintiff's eligibility for unemployment benefits, it did so on the basis of Plaintiff's workplace violations that precipitated his termination, *not* the fact that he resigned. Indeed, Defendant made clear to NMDOL that Plaintiff's "resignation" was not voluntary. (Pl.'s Resp. Br. Def.'s Mot. Summ. J. Ex. 7 at 2 (Defendant's "Employer Statement": Plaintiff "was given the opportunity to resign opposed to being discharged and [Plaintiff] elected to resign").) Simply put, Plaintiff failed to identify any evidence that Defendant used Plaintiff's FMLA rights as leverage to procure his resignation or avoid responsibility for his unemployment compensation. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 879 (10th Cir. 2004) (summary judgment appropriate where no causal connection evidenced).

In sum, it is undisputed that Defendant decided to terminate Plaintiff before Plaintiff requested FMLA leave. Thus, Defendant had an "independent basis" for its employment decision that was "unrelated to [his] request for an FMLA leave," and, thus, did not interfere with FMLA rights. *See*

*Gunnell*,152 F.3d at 1262; *McBride*, 281 F.3d at 1108 (no FMLA interference where employer would have terminated employee regardless of FMLA request); *see also Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 977 (8th Cir. 2005) ("[a]s long as an employer can show a lawful reason, i.e., a reason unrelated to an employee's exercise of FMLA rights, for not restoring an employee on FMLA leave to her position, the employer will be justified to interfere with an employee's FMLA leave rights"). Defendant's summary judgment motion will, therefore, be granted. *See Gunnell*,152 F.3d at 1262; *see also* 29 C.F.R. § 825.312(d).

### 2.    Plaintiff's Motion for Summary Judgment.

Having granted Defendant's summary judgment motion, Plaintiff's Motion for Summary Judgment is denied *ipso facto*. Given that Defendant did not engage in FMLA interference, Plaintiff's motion fails because it would have the Court conclude, as a matter of law, that Defendant did engage in FMLA interference. *See supra* Part II.B.

### III.   Plaintiff's Motion in Limine.

Plaintiff, in his Motion in Limine, moved to exclude evidence not implicated by either party's motion for summary judgment. Given that Defendant is entitled to judgment as a matter of law, *see supra* Part II.C.1., Plaintiff's Motion in Limine is denied.

### IV.    Conclusion.

This is not a case where Defendant undertook a bad-faith effort to coerce an employee's resignation. To the contrary, Defendant afforded Plaintiff FMLA leave despite Plaintiff's turbulent tenure and having no obligation to him under the Act. The record reflects that Defendant's motivation in granting Plaintiff FMLA leave was to ensure that he received treatment for alcohol abuse, not to coerce or otherwise interfere with Plaintiff's rights.

Finding here, as Plaintiff urges, that a good-faith employer violated FMLA by *granting* FMLA leave to a needy employee, despite having no duty to do so, would turn the letter, spirit and purpose of FMLA on its head.  *See, e.g.* S. REP. 103-3, at 1 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 4 (FMLA leave designed for "circumstances that are *critical* to the life of a family") (emphasis added); *see generally* 29 U.S.C. § 2601 (FMLA "findings and purposes").  Plaintiff's position would send well-intentioned, compassionate employers a clear message: "no good deed goes unpunished." (Def.'s Reply at 7.)  This Court, for its part, resolutely refuses to add its imprimatur to, or otherwise condone, Plaintiff's unfortunate and short-sighted litigating position.

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment and Motion in Limine are denied.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**

Finding here, as Plaintiff urges, that a good-faith employer violated FMLA by *granting* FMLA leave to a needy employee, despite having no duty to do so, would turn the letter, spirit and purpose of FMLA on its head.  *See, e.g.* S. REP. 103-3, at 1 (1993), *reprinted in* 1993 U.S.C.C.A.N. 3, 4 (FMLA leave designed for "circumstances that are *critical* to the life of a family") (emphasis added); *see generally* 29 U.S.C. § 2601 (FMLA "findings and purposes").  Plaintiff's position would send well-intentioned, compassionate employers a clear message: "no good deed goes unpunished." (Def.'s Reply at 7.)  This Court, for its part, resolutely refuses to add its imprimatur to, or otherwise condone, Plaintiff's unfortunate and short-sighted litigating position.

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted and Plaintiff's Motion for Summary Judgment and Motion in Limine are denied.

**IT IS SO ORDERED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**